**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

D.S.A.,                                    :
                                           :
                Plaintiff,                 :
                                           :
v.                                         :    Case No: 4:25-cv-94-AGH
                                           :    Social Security Appeal
COMMISSIONER OF SOCIAL                     :
SECURITY,                                  :
                                           :
                Defendant.                 :

_____

**ORDER**

The Social Security Commissioner, by adoption of the Administrative Law Judge's ("ALJ's") determination, denied Plaintiff's application for disability insurance benefits, finding she is not disabled within the meaning of the Social Security Act and accompanying regulations. Plaintiff contends the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g). All administrative remedies have been exhausted. Both parties filed their written consents for all proceedings to be conducted by the United States Magistrate Judge, including the entry of a final judgment directly appealable to the Eleventh Circuit Court of Appeals pursuant to 28 U.S.C. § 636(c)(3). For the reasons explained below, the Commissioner's decision is affirmed.

**LEGAL STANDARDS**

**I.      Standard of Review**

The Court's review of the Commissioner's decision is limited to a determination

of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). "Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal citation and quotation marks omitted). The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The Court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980).[2] The Court must scrutinize the record as a whole to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

## II.    Plaintiff's Burden

The claimant bears the initial burden of proving she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). The claimant's

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decision of the former Fifth Circuit rendered prior to October 1, 1981.

"burden is a heavy one, so stringent that it has been described as bordering on the unrealistic." *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981). A claimant seeking Social Security disability benefits must demonstrate they suffer from an impairment that prevents them from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1)(A). In addition to meeting the requirements of the statute, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1, *et seq.*

## III. Disability Standard

Under the regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4). First, the Commissioner determines whether the claimant is working. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is "working and the work [the claimant is] doing is substantial gainful activity," the Commissioner will find that the claimant is not disabled. *Id.* § 404.1520(b). Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). A claimant must have a "severe impairment" which is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If a claimant does not have an impairment or combination of impairments that is severe, the Commissioner will determine that the claimant is not disabled. *Id.* Third, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed

in Appendix 1 to subpart P of Part 404 of the regulations (the "Listing"). *Id.* § 404.1520(a)(4)(iii). Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") can meet the physical and mental demands of past work. *Id.* § 404.1520(a)(4)(iv). Fifth and finally, the Commissioner determines whether the claimant's RFC, age, education, and past work experience prevent the performance of any other work. 20 C.F.R. § 404.1520(a)(4)(v). In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Id.* § 404.1523(c). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 806 (11th Cir. 2013).

## ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for disability insurance benefits on April 11, 2022, alleging that she became disabled to work on January 1, 2019. Tr. 31.[3] Her claim was denied initially on August 30, 2022, and upon reconsideration on December 7, 2022. *Id.* She requested an evidentiary hearing before an ALJ on April 27, 2023, and one was held telephonically on August 23, 2023. *Id.* Plaintiff appeared with her attorney and testified, as did an impartial vocational expert ("VE"). Tr. 31, 72-105. On June 25, 2024, the ALJ issued an unfavorable decision denying her claim. Tr. 28-49. Plaintiff sought review by the Appeals Council but was denied on August 1, 2024. Tr. 15-20. Having exhausted the administrative remedies available to her under the Social

---

[3] The Court cites to the record using the Commissioner's Bates-stamped page numbers at the bottom right of each page as opposed to the Court's CM/ECF number at the top right of the page.

Security Act, Plaintiff seeks judicial review of the Commissioner's final decision denying her application.  Her case is ripe for review.  42 U.S.C. § 405(g).

**STATEMENT OF FACTS AND EVIDENCE**

On the date last insured, Plaintiff was thirty-nine years old and defined as a younger individual under the Commissioner's regulations.  Finding 7, Tr. 44; 20 C.F.R. § 404.1563(c).  She has at least a high school education and no past relevant work.[4]  Findings 6, 8, Tr. 44.  In conducting the five-step sequential analysis used by the Commissioner in evaluating claims for disability, the ALJ found, at step two, that Plaintiff has severe impairments of obesity, epilepsy, carpal tunnel syndrome, headaches, and lumbar degenerative disc disease.  Finding 3, Tr. 34.  The ALJ next found, at step three, that these impairments, considered both alone and in combination with one another, neither meet nor medically equal a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Finding 4, Tr. 36-37.  Between steps three and four, the ALJ determined that Plaintiff retains the RFC to perform less than a full range of light work with exertional, non-exertional, and environmental limitations.  Finding 5, Tr. 37-44.  Because Plaintiff had no past relevant work, the ALJ then proceeded to step five, where she elicited testimony from the VE that through the date last insured, there were jobs existing in significant numbers in the national economy that Plaintiff could perform based on her age, education, work experience, and RFC, including office helper, ticket taker, and

---

[4] During the evidentiary hearing, the VE identified Plaintiff's past relevant work in the military as a transportation agent and water treatment operator.  Tr. 99.  However, because the ALJ issued her decision more than five years after the work was last performed, it was not considered as past relevant work under the Commissioner's regulations.  Tr. 44; 20 C.F.R. § 404.1565(a).

shipping and receiving weigher.  Finding 10, Tr. 44-45, 100.  Therefore, the ALJ found Plaintiff to be not disabled to work.  Finding 11, Tr. 45.

**DISCUSSION**

Plaintiff raises three enumerations of error.  Pl.'s Br. 6, ECF No. 10.  First, she contends that the ALJ erred by formulating an RFC without any medical opinions and by failing to develop the record.  Pl.'s Br. 7-13.  Second, she argues that the ALJ erred by failing to consider Plaintiff's diagnosis of a traumatic brain injury.  *Id.* at 13-16.  Third, she asserts that the ALJ erred by failing to account for any mental limitations in the RFC and by failing to explain the omission.  *Id.* at 16-21.  The Court finds that none of these contentions have merit.

## I.   Formulation of RFC

Plaintiff argues that the ALJ erred by formulating an RFC without "any medical opinions in the record to guide the functional assessment."  Pl.'s Br. 8.  She observes that the "record is completely devoid of any medical opinions regarding Plaintiff's functional limitations."  *Id.*  As a result, Plaintiff contends that the ALJ "played doctor" and formulated an RFC based solely on her "own lay opinion" and interpretation of "raw medical data."  *Id.* at 9.  As an example, she notes that the ALJ accounted for Plaintiff's carpal tunnel syndrome by limiting Plaintiff to "no more than frequent handling and fingering bilaterally."  *Id.* at 10; Tr. 37, 42.  She argues that a "determination of whether carpal tunnel syndrome results in 'frequent' versus 'occasional' or 'constant' manipulative abilities requires medical expertise that the ALJ does not possess."  Pl.'s Br. 10.  Plaintiff also cites her "seizure disorder" and

6

argues that a "determination of what workplace restrictions are necessary" for her condition requires the input of a medical professional. *Id.* at 10-11. Finally, she argues that the ALJ was required to obtain a consultative examination to assess "Plaintiff's mental health limitations . . . because there is record evidence that Plaintiff has mental impairments of depression, anxiety and insomnia but no opinion assessing functional limitations." *Id.* at 11.

The Court does not agree that the ALJ was required to obtain medical opinion testimony regarding Plaintiff's functional limitations or that her formulation of the RFC based on record evidence constituted "playing doctor." Instead, it constituted the ALJ doing her job as prescribed by regulations. The ALJ—not a doctor—has the responsibility for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c); *see Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("[T]he ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC."); *Dale v. Comm'r of Soc. Sec.*, No. 2:20-cv-521-NPM, 2022 WL 909753, at *7 (M.D. Fla. Mar. 29, 2022) ("[A]n ALJ does not assume the role of a doctor by sorting through the conflicting evidence and making an RFC assessment."); *Sanks v. Saul*, No. 5:19-cv-63, 2020 WL 5648746, at *6-7 (S.D. Ga. Sept. 3, 2020) (rejecting contention that the ALJ erred by not ordering a consultative exam to evaluate plaintiff's ability to work and effect of fibromyalgia, finding that "Plaintiff's argument would rob the ALJ of his role in assessing a claimant's residual functional capacity"), *recommendation adopted by* 2020 WL 5648207 (S.D. Ga. Sept. 22, 2020); *Bryant v. Colvin*, No. CV 115-005, 2016 WL

1070840, at *2 (S.D. Ga. Mar. 16, 2016) (rejecting argument RFC was "not supported by substantial evidence because there [was] not an expert-assessed RFC directly supporting it").  Contrary to Plaintiff's suggestion, the ALJ here did not interpret "raw" medical data, but reviewed the medical providers' clinical findings and assessments and formulated an RFC accordingly.

The ALJ discussed Plaintiff's diagnosis of bilateral carpal tunnel syndrome, noting that in July 25, 2019, Plaintiff reported "right hand numbness worse in the morning." Tr. 38, 546.  Treatment recommendations included wearing a wrist splint while sleeping, reducing activities with the right hand, and adjusting the right wrist brace.  Tr. 38-39, 512, 546.  The ALJ also cited a July 23, 2020, office visit where Plaintiff was diagnosed as having developed carpal tunnel syndrome in the left hand as well, for which the physician also ordered a splint.  Tr. 39, 531-32.  The ALJ acknowledged examinations showing positive Tinel's and Phalen's signs, but also observed that treatment notes showed that her wrist discomfort was managed with anti-inflammatories and wrist splints.  Tr. 42.  Accordingly, the ALJ accounted for Plaintiff's carpal tunnel syndrome by specifically limiting her to no more than frequent handling and fingering "to avoid repetitive movements with the fingers and wrists that might exacerbate the pain."[5]  Tr. 42.  Other than arguing that the ALJ required an expert to reach this finding, Plaintiff points to no evidence requiring greater limitations, and "it is her burden to prove them."  *Dobbs v. Comm'r of Soc. Sec.*, No. 2:16-cv-339-FtM-CM, 2017 WL 4231100, at *6 (M.D. Fla. Sept. 24, 2017)

---

[5] "Frequent" as used in the regulations "means occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

8

(citing *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005)). Further, the Court sees no such evidence. For example, the record contains no recommendation of surgical intervention or physical therapy for Plaintiff's carpal tunnel syndrome. Thus, the ALJ's RFC of frequent handling and fingering is supported by substantial evidence. *See Harris v. Kijakazi*, No. 20-cv-639-jdp, 2021 WL 3124207, at *3 (W.D. Wis. July 23, 2021) (rejecting plaintiff's claim that "severe carpal tunnel syndrome requires a greater restriction than the ALJ ascribed to her," noting that "ALJs often include frequent handling and fingering limitations in the RFCs of claimants with severe carpal tunnel syndrome"); *Wanda C. v. Saul*, No. 3:19-cv-00049, 2021 WL 649801, at *7 (W.D. Va. Feb. 19, 2021) (collecting cases finding that a restriction to frequent handling and fingering was supported by substantial evidence where there was only conservative treatment for carpal tunnel syndrome), *recommendation adopted by* 2021 WL 890577 (W.D. Va. Mar. 9, 2021).

Regarding her seizures, Plaintiff argues that the ALJ needed a medical opinion as to the frequency, triggers, and side effects of medication to formulate an RFC. Pl.'s Br. 11. However, the ALJ specifically found that the record was sufficient to formulate an RFC, and Plaintiff's medical records and her own statements support this finding. Tr. 43, 86-90, 96-97, 245-47, 512, 808. Significantly, the ALJ noted the sporadic nature of the seizures, citing an April 22, 2021, office visit where Plaintiff reported that her last seizure had been in February 2021, and a visit on July 22, 2021, during which she reported that her last seizure had been in April 2021. Tr. 39-40, 508, 512. The April 2021 seizure was the last one reported prior to expiration of

Plaintiff's insured status in December 2021. Tr. 41. The ALJ concluded based on a review of the records that Plaintiff's seizures "remained generally controlled with Topamax during the relevant period" and cited the absence of records showing recurrent emergency room visits or seizure-related follow-up visits.[6]  Tr. 41-42. Among the records cited by the ALJ concerning frequency of seizures was a June 24, 2022, seizure questionnaire in which Plaintiff reported that her last seizure had been six months earlier. Tr. 38, 245. Further, the ALJ referred to Plaintiff's ability to engage in most activities of daily living, including taking care of five children and attending school—with the only seizure-related limitation being her inability to drive—as a further reason for finding her allegations regarding the limiting effects of the seizures non-persuasive. Tr. 41, 555, 803-05.

The Court also rejects Plaintiff's contention that the ALJ needed to obtain a consultative opinion regarding Plaintiff's mental health limitations. An "ALJ is not obliged to order a consultative examination when the record contains sufficient evidence to support a determination." *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)); *see* 20 C.F.R. § 404.1519a. Here, as discussed further below, the record contained ample evidence to allow the ALJ to consider whether—and to what

---

[6] The ALJ also mentioned the absence of an MRI or referral to a neurologist. Tr. 41. However, while there is no MRI report or notes from a neurologist in the record, Plaintiff reported during a June 27, 2023, office visit at a Veterans Affairs ("VA") clinic that she had seen a neurologist in 2022. Tr. 808. Plaintiff stated that she had undergone an EEG and MRI of the brain, and the results were normal. *Id.* These records were not among those Plaintiff submitted after the administrative hearing, and on November 9, 2023, Plaintiff's counsel asked the ALJ to close the record and make a decision. Tr. 75-76, 281, 283-84.

extent—Plaintiff's mental impairments affected her ability to work.  Tr. 237-44, 524-29, 535-37, 554-58.  Thus, the Court finds Plaintiff's first enumeration of error without merit.

## II.    Traumatic Brain Injury

Plaintiff asserts that "[t]he ALJ's decision failed to address or consider Plaintiff's diagnosis of Traumatic Brain Injury."  Pl.'s Br. 14.  She cites numerous references in the record to the diagnosis of "Traumatic Brain Injury," but states that the ALJ "failed to mention" it.  *Id.* at 14-15.  This argument is disingenuous.  The fact that the ALJ did not use the specific words "traumatic brain injury" is beside the point.  The ALJ's job is to consider impairments, and "a diagnosis alone says nothing about the severity of a claimant's condition."  *West v. Astrue*, No. 5:07-cv-133-CAR, 2008 WL 2024963, at *5 (M.D. Ga. May 8, 2008) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)).  Plaintiff's traumatic brain injury occurred in 2009 while she was in the military, and she continued to work after that.  Tr. 94, 229, 610.  The issue is not whether Plaintiff was diagnosed with a traumatic brain injury but whether she suffered any impairments from the injury that affected her ability to work.

Plaintiff does not identify any impairments arising from the traumatic brain injury that the ALJ failed to address.  Pl.'s Br. 13-16.  Moreover, the two impairments that Plaintiff alleges stem from the brain injury are seizures and headaches, which the ALJ addressed in great detail in her decision.  *Id.* at 1; Tr. 33-45.  The Court has already discussed the ALJ's consideration of Plaintiff's seizures.  Regarding Plaintiff's headaches, the ALJ found them to be a severe impairment.  Tr. 34.  She concluded

11

that they were "generally controlled," but included limitations in the RFC to account for any effect they would have on her ability to work.  Tr. 41-42.  If Plaintiff believes the ALJ's finding in this regard was not supported by substantial evidence, she has not briefed it.[7]  Thus, Plaintiff fails to show error in the ALJ's analysis of the alleged impairments arising from her traumatic brain injury.

## III.   Mental Health Limitations

Although Plaintiff captions her third enumeration of error as one attacking the RFC, her argument is actually two-fold.  First, she challenges the ALJ's finding at step two that her mental impairments were non-severe, which she contends is not supported by substantial evidence.  Pl.'s Br.  16-17.  Second, Plaintiff contends that the ALJ erred by "focus[ing] exclusively" on her physical impairments and limitations when determining the RFC without accounting for her mental limitations.  *Id.* at 16-21.  She points out that while the ALJ found that she had some mild mental limitations at step two, she included no mental limitations in the RFC.  *Id.* at 19. Further, she complains that the "ALJ did not articulate why" no mental limitations were included.  *Id.* at 20.  The Court disagrees on both counts.

Initially, the Court concludes that the ALJ's finding that Plaintiff's mental health impairments were non-severe is supported by substantial evidence.  At step two, the ALJ recognized that Plaintiff had medically determinable impairments of

---

[7] On page two of her brief, Plaintiff identifies as her second enumeration of error the ALJ's failure to consider whether her headaches equaled a Listing.  Pl.'s Br. 2.  This does not correspond to the second enumeration of error identified and actually briefed, so the Court assumes this was a drafting error. Moreover, she does not elucidate the Listing argument, so the Court considers it abandoned to the extent she maintains it as error.  *See Marek v. Singletary*, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned.").

adjustment disorder with anxiety, post-traumatic stress disorder ("PTSD"), and depression. Tr. 34, 37. In evaluating their severity, the ALJ applied the psychiatric review technique to rate the impact of these impairments in four broad functional areas, commonly referred to as "paragraph B criteria": 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; and 4) adapting or managing oneself. Tr. 35; *see* 20 C.F.R. § 404.1520a(c)(3); *Micaud v. Acting Comm'r of Soc. Sec.*, No. 24-10253, 2024 WL 4948684, at \*4 (11th Cir. Dec. 3, 2024) (noting that an ALJ must use the psychiatric review technique when evaluating mental impairments).

The ALJ found that Plaintiff had no limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation "at most" in the area of concentrating, persisting, or maintain pace; and a mild limitation in adapting or managing oneself. Tr. 35. In support, the ALJ cited not only Plaintiff's numerous treatment records but also Plaintiff's own adult function report wherein she reported: (1) having no issues with memory, completing tasks, concentration, understanding, following instructions, or getting along with others; (2) being able to follow instructions "very well," getting along with authority figures "very well," and handling stress "well"; (3) and being able perform most activities of daily living, including taking care of her five children. Tr. 35, 237-44. Because Plaintiff had no more than a mild limitation in any area—and the evidence did not otherwise indicate more than a minimal limitation on her ability to work— her mental impairments were deemed non-severe. Tr. 35; *see* 20 C.F.R.

13

§ 404.1520a(d)(1).   Summarizing Plaintiff's medically determinable mental impairments, the ALJ concluded that they "did not cause more than minimal limitation in claimant's ability to perform basic mental work activities and were therefore non-severe." Tr. 34. She stated that "[t]he record show[ed] adequate mental status examinations and occasional mild depression with intact memory and orientation, adequate judgment and insight, and denial of ideations, hallucinations, or delusions." *Id.* The ALJ's findings are supported by the record evidence.[8] Tr. 524-27, 529, 535-37, 554-58, 807-10.

The Court also disagrees with Plaintiff's assertion that the ALJ failed to account for Plaintiff's mental health limitations when formulating the RFC. "[T]he best way to read the ALJ's decision is 'as a whole' because 'it would be a needless formality to have the ALJ repeat substantially similar factual analyses.'" *Prude v. Comm'r, Soc. Sec. Admin.*, No. 23-14198, 2024 WL 5103664, at *4 (11th Cir. Dec. 13, 2024) (quoting *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1275 (11th Cir. 2024). Here, the ALJ discussed Plaintiff's mental health limitations in great depth at steps two and three of the five-step sequential analysis.  There was no reason for her to repeat in her RFC analysis what she had previously stated.

During the ALJ's RFC analysis, she continued her discussion of Plaintiff's mental impairments.  She noted a January 24, 2019, visit where Plaintiff reported

---

[8] Further, any error in finding Plaintiff's mental impairments to be non-severe is harmless because the ALJ found that Plaintiff had other impairments that were severe and then considered—as discussed herein—her non-severe mental impairments when formulating the RFC. *See Fernandez v. Saul*, 533 F. Supp. 3d 1071, 1077 (M.D. Ala. 2020) ("If an ALJ finds that the claimant has a severe impairment, any error in not finding other impairments to be severe is harmless so long as the ALJ considers all of the claimant's impairments throughout the remainder of his evaluation.").

"feeling a little depressed" after being out of her medication for a few months and being busy with five children and going to school.  Tr. 38, 555.  Plaintiff reported trouble sleeping and "checking her doors constantly at night," but also denied symptoms related to anxiety and panic attacks, and denied any complaints requiring immediate attention.  Tr. 555.  The ALJ noted the mental health exam showing a "somewhat depressed mood" but otherwise indicated thought content without aberration and fair remote memory, insight, and judgment.  Tr. 38, 555-56.

The ALJ also discussed a March 25, 2020, visit to a VA psychiatrist where Plaintiff reported trouble sleeping, probably due to the stress of the Coronavirus.  Tr. 39, 535.  Her doxepin dosage was increased, but again, her mental status exam showed a logical thought process, average intellectual functioning, and fair remote memory, insight, and judgment.  Tr. 39, 535-36.

The ALJ then summarized a January 22, 2021, visit to the VA where Plaintiff complained about depression and anxiety since learning that her service-connected disability benefits had been reduced from 100% to 60%.[9]  Tr. 39, 529.  Plaintiff was described as "distressed and crying" and requesting medication for her symptoms.  Tr. 529.  At the same time, the staff psychiatrist noted that her speech was clear and coherent with no thought disorder, intact memory and orientation, and fair insight and judgment.  *Id.*  On March 1, 2021, Plaintiff returned to the VA and again

---

[9] The record is unclear as to exactly what service-related disability was reduced.  Both the ALJ and Plaintiff assert that the VA gave her a 100% disability rating related to depression and anxiety that was later reduced to 60% in January 2021.  Tr. 37; Pl.'s Br. 11.  However, a progress note indicates that it was a rating for epilepsy that was reduced.  Tr. 526.  In any event, the ALJ specifically noted that she was not bound by the VA rating and found such evidence "inherently neither valuable nor persuasive."  Tr. 43; *see* 20 C.F.R. § 404.1504 (noting that decisions by the VA and other governmental entities was not binding on the Commissioner).

expressed anger related to the reduction in her benefits, along with what was described as "disillusionment with life roles and trajectory; interpersonal functioning." Tr. 39, 524.

After summarizing the record, the ALJ then explained why she found Plaintiff's statements regarding the limiting effects of her impairments—including her mental impairments—"not entirely consistent" with the evidence. Tr. 40. Specifically, the ALJ noted that Plaintiff's reported depression and anxiety was "related to specific life events, such as the reduction of her service-connected benefits, particularly when she was not taking her medications." Tr. 41. The ALJ also noted "some depression in the context of acute life stressors." *Id.* In summary, the record shows that the ALJ *did* consider Plaintiff's medically determinable mental health impairments when formulating the RFC, and it is clear from the ALJ's discussion why she included no mental limitations.

Further, Plaintiff does not identify any mental limitations that she contends should have been included in the RFC.[10] "When challenging the mental limitations included, or not included, in the RFC finding, the plaintiff bears the burden of proving that she has limitations stemming from her mental impairment." *McGuire v.*

---

[10] The term "limitations" as used in step two when applying the paragraph B criteria to mental impairments does not have the same meaning as "limitations" when discussing a claimant's RFC. "The limitations in the paragraph B criteria help the ALJ determine the severity of a claimant's mental impairments or whether a claimant meets a listing, while limitations in the RFC help the ALJ determine the level of work that a claimant is capable of engaging in." *Di Gioia v. Comm'r of Soc. Sec.*, No. 2:21-CV-262-SPC-MRM, 2022 WL 3567356, at *8 (M.D. Fla. Aug. 2, 2022) (comparing 20 C.F.R. § 404.1520a with 20 C.F.R. § 404.1545), *report and recommendation adopted by* 2022 WL 3544376 (M.D. Fla. Aug. 18, 2022). "Plaintiff has provided no authority suggesting that . . . an ALJ is required to include mental limitations in the RFC on finding 'mild' limitations in the paragraph B criteria." *Id.*

16

*Berryhill*, No. 5:17-cv-70, 2018 WL 4126571, at *6 (S.D. Ga. Aug. 29, 2018) (citing *Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 853 (11th Cir. 2018)), *recommendation adopted by* 2018 WL 4688728 (M.D. Ga. Sept. 28, 2018).  Because Plaintiff can show no specific mental limitation that should have been included in the RFC, she fails to meet this burden.  *See Sarina C. v. Comm'r, Soc. Sec. Admin.*, No. 1:22-cv-2019-JKL, 2023 WL 12148412, at *4 (N.D. Ga. Mar. 29, 2023) (finding that plaintiff failed to meet her burden where she, *inter alia*, did not "proffer what limitations the ALJ should have included" in the RFC); *Clear v. Berryhill*, No. 17-13836, 2018 WL 8345159, at *7 (E.D. Mich. Dec. 28, 2018) (finding that plaintiff failed to meet his burden where he "indicate[d] no specific functional limitation allegedly arising from any mental impairment that the ALJ should have included in the RFC"), *recommendation adopted by* 2019 WL 1349615 (E.D. Mich. Mar. 26, 2019).

Finally, "caselaw recognizes that 'to show that an ALJ erred in not including a mental functional limitation in the residual functional limitation, the plaintiff must demonstrate that she had at least a *moderate* limitation in one of the four areas of mental functioning [of the paragraph B criteria]." *Sarina C.*, 2023 WL 12148412, at *4 (quoting *Willyard v. Saul*, No. 8:19-CV-2537-T-TGW, 2020 WL 7074467, at *3 (M.D. Fla. Dec. 3, 2020)); *see Alvarado v. Kijakazi*, No. 22-CV-60416-ALTMAN/Hunt, 2023 WL 2548424, at *13 (S.D. Fla. Mar. 17, 2023) (collecting cases).  Here, as noted above, the ALJ found only mild areas of mental functioning.  Tr. 35.  While Plaintiff criticizes the fact that the ALJ  relied "in part" on her responsiveness to questioning during the administrative hearing and on the fact that she had obtained a college

degree years earlier, she does not explain why she feels the evidence shows one of the paragraph B criteria to be moderate.  Pl.'s Br. 18.

In summary, the Court concludes that the ALJ appropriately considered the record and Plaintiff's medically determinable impairments and limitations when formulating the RFC, and her findings are supported by substantial evidence. Accordingly, the Court rejects Plaintiff's enumerations of error.

## CONCLUSION

For the foregoing reasons, the determination of the Social Security Commissioner is affirmed.

**SO ORDERED**, this 13th day of March, 2026.

s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE
